United States District Court
for the
Southern District of Florida

| | |
|---|---|
| AE Management, LLC, and others, Plaintiffs, <br><br> v. <br><br> Illinois Union Insurance Company and Chubb National Insurance Company, Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 20-22925-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

**Order Granting Motion to Dismiss**

The Plaintiffs in this case—AE Management, LLC; AE Restaurant Group, Inc.; Italica Ristorante, Inc.; ADL Restaurant, LLC; Angelos Wine Bar Weston, LLC; AE Addison Place, LLC; AE Coral Springs, LLC; AE Oakland Bakery and Trattoria, LLC; and AE Aventura, LLC (the "Restaurants")—are several restaurant owners and operators in South Florida. The Restaurants complain Defendants Illinois Union Insurance Company and Chubb National Insurance Company (the "Insurance Company") failed to provide coverage under the parties' commercial property insurance policy for losses they incurred as a result of government emergency orders, restricting in-person dining, issued in response to the COVID-19 pandemic. (Am. Compl., ECF No. 15.) The Insurance Company has filed a motion to dismiss the Restaurants' amended complaint, contending the Restaurants' claimed losses are not covered under the policy and, in any event, coverage is precluded by the policy's virus exclusion. (Defs.' Mot., ECF No. 29.) In response, the Restaurants argues they have sufficiently alleged their breach-of-contract claim against the Insurance Company. (Pls.' Resp., ECF No. 32.) The Defendants have timely replied. (Defs.' Reply, ECF No. 38.) While the Court is sympathetic to the Restaurants' hardship and losses, the Court agrees with the Insurance Company that the claimed losses are not covered under the policy and, therefore, **grants** the Insurance Company's motion to dismiss (**ECF No. 29**.)

1. **Background**[1]

The Restaurants range from casual eateries to upscale Italian dining venues throughout South Florida. (Am. Compl. ¶ 28.) The Restaurants offer on-

---

[1] The Court generally accepts the Plaintiffs' factual allegations as true for the purposes of evaluating the Defendants' motions to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

premises dining and table service, delivery service, and take-out service, with the vast majority of their revenue coming from on-premises dining and table service. (*Id.* ¶¶ 30–31.) To protect their property, businesses, and income from losses, the Restaurants secured an insurance policy from Illinois Union. (*Id.* ¶ 42.)

The policy was in effect at the time Florida's governor issued an emergency order, on March 16, 2020, in response to growing concern about the COVID-19 pandemic, mandating that restaurant dine-in services maintain a six-foot distance between tables. (*Id.* ¶ 48.) The next day, on March 17, Miami-Dade County issued an emergency order, requiring all restaurants with seating for more than eight people to cease offering on-premises services altogether. (*Id.* ¶ 49.) A few days later, on March 20, the governor ordered all restaurants in Broward and Palm Beach counties to cease offering on-premises services as well. (*Id.* ¶ 50.)

The Restaurants complied with all these orders and, as a result, stopped offering on-premises dining. (*Id.* ¶ 51.) After May 11, the Restaurants operated their on-premises dining services, but with limited capacity. (*Id.* ¶ 58.) As a result of these restrictions, as would be expected, the Restaurants suffered losses of business income and incurred additional expenses. (*Id.* ¶ 60.)

The policy under which the Restaurants seek coverage is an all-risk commercial property insurance policy, with blanket limits of $7,879,226 for physical building and personal property damages and $15,704,226 for business income. (*Id.* ¶ 69.) According to the Restaurants, the policy does not contain an exclusion for the loss of business income caused by emergency orders resulting in the physical loss of or damage to Restaurant properties. (*Id.* ¶ 71.) The policy contains a business-interruption clause:

> [The insurer] will pay for the actual loss of Business Income [the insured] sustain[s] due to the necessary "suspension" of [the insured] "operations" during the "period of restoration[.]" The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(*Id.* ¶ 74; Ex. A, Policy, ECF No. 15-1, 48.) The policy also includes coverage for "Extra Expense" which includes "necessary expenses [the insured] incur[s] during the 'period of restoration' that [the insured] would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." (Am. Compl. ¶ 79; Policy at 48.) The

Restaurants say they timely provided notice to the Insurance Company, but the Insurance Company denied coverage. (Am. Compl. ¶ 85.)

### 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if it fails to nudge its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

As acknowledged above, the Court is not unsympathetic to the Restaurants' position and the considerable losses they have no doubt incurred as a result of the COVID-19 pandemic and the associated governmental orders impacting their business. "[A] growing number of state and federal courts in Florida and around the country," however, "have considered the issue and have almost uniformly held that economic losses resulting from . . . government orders closing businesses to slow the spread of COVID-19 are not covered under 'all risk' policy language identical to that in this case because such losses were not caused by direct physical loss of or damage to the insured property." *Emerald Coast Restaurants, Inc. v. Aspen Specialty Ins. Co.*, No. 20-cv-5898, 2020 WL 7889061, at *2 (N.D. Fla. Dec. 18, 2020).

The Restaurants argue they have sufficiently alleged their entitlement to coverage as a result of, alternatively, (1) "government orders limiting the functionality of [their] property"; (2) "the imminent risk of harm of future COVID-19 virus exposures," separate and apart from the government orders; or (3) "the need to preserve property under the Policy and common law. . . in the face of an imminent risk of harm." (Pls.' Resp. at 2.)

As the Restaurants frame it, the government orders caused the Restaurants, their employees, and their customers "to lose physical use of, and

physical access to, property at the covered restaurants premises." (*Id.* at 3.) According to the Restaurants, this loss of use of the premises, or loss of access to the premises, satisfies the policy's requirement that there be "direct physical loss of or damage to property at [the insured] premises." (*Id.* at 10.) The Court finds the Restaurants' interpretation to stretch the plain meaning of the policy's words beyond what they can bear. Simply put, and as other Courts in this district have noted when considering similar lawsuits, the Restaurants simply do not provide the Court with adequate reason to depart from the nearly unanimous view that neither the government's orders nor COVID-19 caused direct physical loss of or damage to the Restaurants' property sufficient to trigger coverage. S*ee, e.g.*, *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, 20-22055-CIV, 2021 WL 602585, at *8 (S.D. Fla. Feb. 16, 2021) (Altonaga, J.) ("[T]o establish coverage, Plaintiff must show that its loss of business income occurred because its covered property suffered some actual, physical harm."); *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, No. 20-23586-Civ, 2021 WL 124416, at *2 (S.D. Fla. Jan. 13, 2021) (Scola, J.) (adopting "the nearly unanimous view that COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger coverage" under similar policy language); *Atma Beauty, Inc. v. HDI Glob. Specialty SE*, 1:20-CV-21745, 2020 WL 7770398, at *4 (S.D. Fla. Dec. 30, 2020) (Gayles, J.) ("While Plaintiff argues that a loss of functionality of, access to, or intended use of the salon constitutes physical loss or damage, it is not supported by the plain language of the Policy or Florida law."); *Sun Cuisine, LLC v. Certain Underwriters at Lloyd's London*, No. 20-cv-21827, 2020 WL 7699672, at *4 (S.D. Fla. Dec. 28, 2020) (Gayles, J.) (concluding that the "[p]laintiff's allegations provide[d] the Court no reason to deviate from the prevailing consensus in this Circuit and others regarding business interruption claims arising from the COVID-19 pandemic" that such claims "do not plausibly show direct physical loss or damage" to property); *SA Palm Beach LLC v. Certain Underwriters at Lloyd's, London*, No. 9:20-cv-80677, 2020 WL 7251643, at *5 (S.D. Fla. Dec. 9, 2020) (Ungaro, J.) (finding no direct physical loss where plaintiff alleged that it was "unable to use its property for its intended purpose") (cleaned up).

     To find otherwise would require the Court to read additional words into the policy. That is, under the Restaurants' view, the words "access to" are somehow implied in the relevant coverage language. By their argument, then, "direct physical loss of" property is equivalent to "direct physical loss of *access to*" property. But the Restaurants provide no means by which the Court could make such an interpretative leap. To the contrary, under Florida law, the phrase, "direct physical loss of or damage to property" requires "a distinct, demonstrable, physical alteration of the property" and does not include "losses

that are intangible or incorporeal." *Mama Jo's, Inc. v. Sparta Ins. Co.*, 17-CV-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) (Moore, J.), *aff'd,* 823 Fed. App'x 868 (11th Cir. 2020).

  The Restaurants are critical of the cases the Insurance Company contends are persuasive. The Court finds these criticisms largely unwarranted. For example, the Court disagrees that the analyses and conclusions in *Malaube, LLC v. Greenwich Ins. Co.* are distinguishable. 20-22615-CIV, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) (Torres, Mag. J.). *Malaube* involved the same policy language and nearly identical allegations to those at issue here. Like here, the plaintiff restaurant in *Malaube* alleged that Florida government orders, issued in response to the COVID-19 pandemic, restricted the restaurant from providing on-premises dining, resulting in financial losses. *Compare id.* at *1, *5 *with* Am. Compl. at ¶ 46 (alleging state and local orders issued "[w]hen it became apparent" that knowledge of the COVID-19 pandemic alone "would not naturally facilitate voluntary strict social distancing and the curtailing of social-gathering business operations") and ¶ 54 (the "emergency orders caused Plaintiffs' losses"). The restaurant in *Malaube* "equate[d] the closure of its indoor dining to a physical loss because the business could no longer operate for its intended purpose." *Malaube*, 2020 WL 5051581 at *5. Like here, the *Malaube* restaurant argued "that physical loss does not require structural alteration and that a property's inability to operate with its intended purpose (i.e. the operation of both its indoor and outdoor dining sections) falls within the insurance policy's coverage" requiring a direct physical loss of property. *Id.* After a comprehensive analysis, the Court in *Malaube* concluded that, under Florida law, the restaurant there failed to state a claim for coverage under the same provisions at issue here because it simply failed to allege "direct physical of or damage to property." *Id.* at *9. Much like the other cases the Insurance Company relies upon, the Court finds *Malaube* directly on point and persuasive.

  Conversely, the Court is not persuaded by the cases the Restaurants cite in support of their position. Upon review, the Court finds many of them mischaracterized by the Restaurants, distinguishable, or otherwise not compelling in the face of the numerous contrary cases issuing from state and federal courts throughout Florida.

  In an attempt to skirt their failure to establish a direct physical loss of or damage to their properties, the Restaurants, in their opposition to the motion to dismiss, contend entitlement to coverage under another theory: the losses they incurred, in restricting or discontinuing their on-premises dining, mitigated the risk of the virus's contaminating their properties. (Pls.' Resp. at 14.) In short, the Restaurants maintain that "[b]y closing their on-premises

dining, [they] materially limited the [Insurance Company's] overall exposure under the Policy." (*Id.* at 15.) Not only is this an entirely new theory, not alleged anywhere in the complaint, but it is meritless as well. Under the relevant policy provision, "*in the event of a loss*," the Restaurants must "[t]ake all reasonable steps to protect the Covered Property from *further* damage, and keep a record of . . . expenses necessary to protect the Covered Property." (Policy at 52 (emphasis added).) Under Florida law, such mitigation losses, under a mitigation provision like this, come into play only if an actual, covered loss has occurred. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 170 (Fla. 2003). Since the Restaurants have failed to allege a covered loss, their claim for mitigation coverage, had it been pleaded, would fail as well.

Additionally, just as the Restaurants fail to allege direct physical loss of or damage to property at their premises, they also fail to allege that any property away from their premises sustained any damage. Accordingly, any claim under the policy's Civil Authority Coverage provision, which requires damage to property within a mile of the insured premises, fails as well.

Lastly, because the Court finds the restaurants fail to allege facts establishing their entitlement to coverage, the Court declines to consider the applicability of the policy's virus exclusion or whether Chubb was properly named as a defendant in this case.

### 4. Conclusion

For the reasons set forth above, the Court dismisses the Restaurants' complaint, comprised solely of one count of breach of contract against the Insurance Company. The Court **dismisses** the Restaurants' amended complaint **with prejudice** because they have failed to state a claim under Rule 12(b)(6). Further, the Court **denies** the Restaurants' request for **leave to amend**, inserted as an afterthought, at the conclusion of their opposition to the Insurance Company's motion to dismiss: the request is both procedurally defective and lacking in substantive support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.*, 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up).

The Court also **denies as moot** both the Insurance Company's motion to take judicial notice of the various civil-authority orders referenced in the

Restaurants' complaint (**ECF No. 30**) and the Restaurants' motion to strike exhibit 6 to the Insurance Company's motion to dismiss (**ECF No. 37**). The Court's order here did not rely on any of those documents and so the requested relief is moot.

Finally, the Clerk is directed to **close** this case. Any pending motions not disposed of in this order are also denied as moot.

**Done and ordered** at Miami, Florida, on March 4, 2021.

Robert N. Scola, Jr.
United States District Judge